CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

June 8, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Robin Bordwine**
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **Criminal No. 2:23-cr-00008** |
| v. ) | |
| ) | **By: Michael F. Urbanski** |
| JAMES THOMAS GREEN, ) | **Senior United States District Judge** |
| Defendant-Petitioner ) | |

**MEMORANDUM OPINION**

Proceeding pro se, James Thomas Green filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for compassionate release. ECF No. 80. The Federal Public Defender filed a supplemental motion on his behalf, ECF No. 90, and the government has filed a response in opposition. ECF No. 96. As discussed below, the court **DENIES** the motions.

**I. Background**

On May 17, 2023, Green entered into a non-binding plea agreement in which he pled guilty to one count of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and one count of conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, also in violation of §§ 841(a)(1) and 841(b)(1)(A). Plea Agreement, ECF No. 38 at 1–2. On February 22, 2024, Green was sentenced to a term of 100 months to be

followed by a 5-year term of supervised release. Am. J., ECF No. 71. Green has been incarcerated since April 25, 2023, and has a projected release date of December 16, 2029.[1]

Green seeks compassionate release based on claims that (1) his mother is incapacitated by poor health and Green is the only available caregiver for her; (2) the COVID-19 pandemic created harsh conditions of confinement; and (3) his efforts at rehabilitation merit a sentence reduction. Mots., ECF Nos. 80, 90. The government counters that Green has not shown evidence of an extraordinary and compelling reasons warranting compassionate release, and that even if he had done so, the 18 U.S.C § 3553(a) factors preclude relief. Resp., ECF No. 96.

## II.  Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "James Thomas Green") (last viewed May 28, 2026).

Accordingly, Green's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion

Exhaustion is a non-jurisdictional threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). The requirement is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Green claims that he submitted a request to the warden at the facility where he was being held but received no response and the government does not contest exhaustion. Accordingly, the court finds that Green satisfied the exhaustion requirement. See Muhammad, 16 F.4th at 130 (holding that because the exhaustion requirement is not jurisdictional, it may be waived or forfeited).

### B. Extraordinary and Compelling Reasons

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised policy statement will be applied to Green's motion.

**(1) Mother's Health**

Green claims that he is entitled to compassionate release based on his mother's poor health and the fact that no one else is available to care for her. Under the relevant revised guideline, USSG § 1B1.13(b)(3)(C), to demonstrate an extraordinary and compelling reason for a sentence reduction based on the need to care for a parent, the defendant must show "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Applying the policy statement to Green's motion, the court must first determine whether Green has shown that his mother is "incapacitated." If Green makes that showing, the court next looks at whether Green has shown that he is his mother's only available caregiver.

Green asserts that his mother has been diagnosed with hypertension, chronic obstructive pulmonary disease (COPD), pulmonary fibrosis, a vitamin B12 deficiency, hypokalemia, gastroesophageal reflux disease (GERD), seasonal allergies, and depression. Mot., ECF No. 90 at 5. Medical records indicate that in addition to the foregoing, she has been diagnosed with prediabetes, protein-calorie malnutrition, benzodiazepine dependence, and opioid dependence with current use. Med. R., ECF No. 90-3 at 15. On October 28, 2025, her hypertension was described as uncontrolled with associated symptoms of headaches and sweats. Med. R., ECF No. 90-3 at 11. Her physical exam was unremarkable. Id. at 15. On October 2, 2025, her COPD, pulmonary fibrosis, GERD, hyperlipidemia and chronic low back pain were described as managed with medication and supplemental oxygen. Id. at 83–84. She had osteopenia with a moderate risk for fracture. Id. at 84. Her depression was described as stable. Id. at 89.

In a self-assessment done on May 1, 2025, Green's mother reported that her general well-being and overall physical function were good and she did not feel any weakness. She experienced some stress and pain but overall felt very satisfied with life. She was sometimes bothered by stress but was able to cope effectively. She maintained positive mental well-being by enjoying social interaction and said she usually received adequate emotional support. She was not bothered by dizziness and reported no falls. She did not need help with her activities of daily living, or with shopping, cooking, using the telephone, housekeeping, laundry, transportation, taking medications, or banking. She did not use assistive devices. She had no hearing problems but reported vision problems. She scored three out of five points on a mini-cognition test. Id. at 247–49.

The sentencing guidelines do not provide a definition of "incapacitated," but this court previously has looked to Bureau of Prisons (BOP) Program Statement 5050.50, which describes the procedures the BOP uses to implement requests for compassionate release. The program statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse … is completely disabled, meaning that the spouse … cannot carry on any self-care and is totally confined to a bed or chair." United States v. Collins, No. 15-10188-EFM, 17-10061-EFM, 2020 WL 136859, at *4 (D. Kan., Jan. 13, 2020) (quoting BOP Program Statement § 5050.50 at 10).

While the program statement is not binding on the courts, it indicates the severity of incapacitation that the BOP finds necessary in determining that a defendant has demonstrated an extraordinary and compelling reason for compassionate release, and many courts, including this one, look to the program statement for guidance. See, e.g., United States

v. Vaughn, Nos. 7:10-CR-17, 7:19-CR-25, 2025 WL 84215, at *4 n.4 (W.D. Va. Jan. 13, 2025) (Urbanski, J.); United States v. Castle, No. 2:15-cr-00190-KMJ-DB-2, 2024 WL 3429668, at *2 (E.D. Cal., July 16, 2024); and United States v. White, No. CR 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

In United States v. Taveras, 731 F.Supp.3d 94, 99 (D. Mass. April 12, 2024) (citing United States v. Beck, 425 F.Supp.3d 575, 579 (M.D.N.C. 2019)), a district court found that relying solely on BOP Program Statement 5050.50 was inappropriate, reasoning that revisions to 18 U.S.C. § 3582(c)(1) were intended to provide courts with more oversight and discretion and allow for sentence reductions even when the BOP found they were not appropriate. The Taveras court looked at the definition of an incapacitated person in the Uniform Probate Code, Section 5-102(4) (1969, revised 2019) (UPC). Under the UPC, "a person is 'incapacitated' when that individual, 'for reasons other than being a minor, is unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance.'" Taveras, 731 F.Supp.3d at 99. The court commented the following:

> The definition of "incapacitation" under the UPC is a stringent standard in order to protect the rights of the subject of the guardianship proceedings. This interpretation of "incapacitation" creates a high bar for a finding that a defendant's parent is incapacitated under U.S.S.G. § 1B1.13(b)(3)(C). However, the interpretation based on the UPC is both compatible with the strict requirements for "extraordinary and compelling circumstances" required for compassionate release and effectuates the federal policy that "compassionate release is an 'extraordinary' remedy." [United States v. Ramirez, 459 F. Supp. 3d 336, 338 D. Mass. 2020)] (citing 18 U.S.C. § 3582(c)(1)(A)(i)));

6

See [Parmenter v. Prudential Ins. Co. of Am., 93 F.4th 13, 21 (4th Cir. 2024)].

Taveras, 731 F. Supp. 3d 94 at 99–100. See also United States v. Ross, No. 4:17-cr-00102-AKB-1, 2024 WL 3677337, at *2 (D. Idaho, Aug. 5, 2024) (citing Taveras and denying motion for compassionate release in part because defendant did not show that his mother "lack[ed] the ability to meet essential requirements for physical safety, safety, or self-care.").

Recognizing that the neither the BOP program statement nor the UPC definition of "incapacitation" is binding, but looking to both for guidance, the court finds that the evidence that Green has submitted in this case does not support the conclusion that his mother is "incapacitated" by any measure. Green's mother suffers from some ailments that, except for hypertension, are well-controlled. Nothing in the record indicates that Green's mother is incapacitated such that she cannot live by herself without assistance. While the court is sympathetic to Green's mother's health issues and his desire to care for her, the evidence does not show that his mother's medical conditions are incapacitating at this time. Accordingly, Green's claim that he is entitled to a sentence reduction based on his mother's health is **DENIED**.[2]

**(2) COVID-19**

Green argues that he is entitled to a sentence reduction because of the COVID-19 pandemic. He claims that during the pandemic inmates were subject to extraordinarily long lockdowns and loss of privileges which increased the punitive effects of incarceration.

---

[2] Because Green has not shown that his mother's medical conditions are incapacitating, the court does not assess whether he is her only available caregiver.

Under the revised policy statement, to demonstrate an extraordinary and compelling reason for a sentence reduction based on an outbreak of an infectious disease a defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1)(D).

Green has not made this showing in any respect. Accordingly, his motion for a sentence reduction based on the effects of COVID-19 is **DENIED**.

**(3) Rehabilitation**

Finally, Green tells the court that he no longer is a danger to society given his efforts towards rehabilitation. Since being incarcerated he has had no disciplinary incidents, has completed drug treatment education, and has taken several other classes. He is assessed as being at low risk for recidivism and his security classification is medium. The court is impressed by Green's efforts towards rehabilitation and believes that it speaks well of his intention to live a law-abiding life when he is released from incarceration. Nevertheless, any argument that he is entitled to a sentence reduction on the basis of rehabilitation is foreclosed by USSG § 1B1.13(d). That section of the sentencing guidelines provides that "pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling

8

reason for purposes of this policy statement." USSG § 1B1.13(d). Rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id. See also United States v. Graves, No. 7:16-cr-00056, 2020 WL 2847631, at *2 (W.D. Va. June 2, 2020) (noting that "[r]ehabilitation, standing alone, 'shall not be considered an extraordinary and compelling reason' for sentence reduction").

Because Green has not sufficiently alleged or provided evidence of any other extraordinary and compelling reason for a sentence reduction, the court will not consider his rehabilitation as a standalone reason for a sentence reduction. His motion for a sentence reduction based on his rehabilitation is **DENIED**.

### C. 18 U.S.C. § 3553(a) Factors

As Green has not shown an extraordinary and compelling reason for compassionate release, the court will not address the § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.")

### III. Conclusion

For the reasons stated herein, the court **DENIES** Green's motions for compassionate release, ECF Nos. 80, 90.

An appropriate order will be issued.

It is so **ORDERED**.

Entered: June 8, 2026

Michael F. Urbanski
U.S. District Judge
2026.06.08 13:56:01 -04'00'

Michael F. Urbanski
Senior United States District Judge

10